UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ALLEN JONES, III, | : | Case No. 3:19-cv-142 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

**I.     Introduction**

In November 2015, Plaintiff Allen Jones III filed an application for Disability Insurance Benefits, Supplemental Security Income, and for a period of disability benefits. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Laura S. Twilley concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action. He seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 13), Plaintiff's Reply (Doc. No. 14), and the administrative record (Doc. No. 6).

## II. Background

Plaintiff asserts that he has been under a disability since September 4, 2015. At that time, he was fifty-six years old. Accordingly, he was considered a "person of advanced age" under Social Security Regulations. *See* § 404.1563(e); 20 C.F.R. § 416.963(e).[1] He has at least a high school education.

The evidence of the record is sufficiently summarized in the ALJ's decision (Doc. No. 6-2, Page ID 58-75), Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 13), and Plaintiff's Reply (Doc. No. 14). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the legal criteria—may result in reversal even when the record contains substantial evidence supporting the factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

3

right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### IV. The ALJ's Decision

As noted previously, the Administrative Law Judge was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the Administrative Law Judge considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. She reached the following main conclusions:

- Step 1: Plaintiff did not engage in substantial gainful employment after September 4, 2015.

- Step 2: He has the severe impairments of substance dependence, lumbar arthropathy, lumbar stenosis, depression, and an intellectual disability.

- Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

- Step 4: His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002), consists of "medium work…except he is limited to no climbing of ropes, ladders, or scaffolds occasional climbing of ramps and stairs; no crawling; occasional stooping, kneeling, crouching, and balancing on uneven, moving, or narrow surfaces; no work involving any exposure to hot or cold temperatures; only occasional exposure to dust, fumes, odors, gases, or other pulmonary irritants; capable of understanding, remembering, and carrying out simple routine tasks with simple instructions; no production rate work or strict production quotas; few, if any, changes in the work process."

- Step 4: Plaintiff can perform past relevant work as an automobile detailer, and such work does not require performance of work-related activities precluded by his residual functional capacity.

(Doc. No. 6-2, PageID 61-75). Based on these findings, the Administrative Law Judge ultimately concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 75.

4

V.    **Discussion**

Plaintiff advances several arguments in his Statement of Errors which primarily focus on the evaluation of the medical evidence and medical source opinions and the assessment of his residual functional capacity. (Doc. No. 9, Page ID 1447).

Plaintiff initially challenges the weight assigned to the medical opinion of internal-medicine consultative-examiner, Dr. Timothy Burns. *Id.* at 1448. He specifically argues that Dr. Burns' opinion was afforded too much weight because his opinion suffered from the same deficiency—i.e., lack of access to relevant evidence—that served as the basis for discrediting the medical opinions of Drs. Leslie Green and David Knierim. *Id.* at 1447.

After a physical examination, Dr. Burns found Plaintiff did not have any physical limitations with sitting, standing, walking, lifting, carrying, handling, or speaking. (Doc. No. 6-2, PageID 71-72). These findings were consistent with the physical evaluation and x-rays and were also supported by the evidence in the record that was available through the time of the examination. *Id.* Based on this consistency as well as the fact that Dr. Burns' physically examined Plaintiff and completed diagnostic testing, the ALJ afforded Dr. Burns' opinion "significant, but not great, weight." *Id.* at 71. The ALJ declined to afford the opinion more weight because Dr. Burns lacked "access to later evidence that demonstrated [Plaintiff] would have some physical limitations." *Id.* at 72.

Similar to Dr. Burns, Drs. Green and Knierim opined that Plaintiff's physical impairments were non-severe and did not require limitations. *Id.* at 71. Likewise, these state agency physicians rendered their opinions before later evidence became available that indicated Plaintiff's lumbar issues were more severe. *Id.* However, unlike Dr. Burns, the

5

ALJ noted that Drs. Green and Knierim did not personally examine Plaintiff or perform diagnostic testing. *Id.* Thus, the ALJ afforded only "little weight" to these opinions even though later evidence indicated that Plaintiff's lumbar issues were more severe. *Id.*

When weighing medical opinions, ALJs utilize the factors listed in 20 C.F.R. § 404.1527(c) and § 404.927(c). *See* 20 C.F.R. §§ 404.1527(c), 404.927(c). As reflected in the regulations, the medical opinion of a source who has examined the claimant will generally be afforded more weight than the opinion of a source who has not examined the claimant. 20 C.F.R. §§ 404.1527(c)(1), 404.927(c)(1). Likewise, more weight will be given to a medical opinion when the opinion is more consistent with the record as a whole. 20 C.F.R. §§ 404.1527(c)(4), 404.927(c)(4). And while an ALJ "may rely on opinions of medical professionals who did not have complete access to the record at the time of their opinion," there must be "some indications that the ALJ considered the subsequent records before giving greater weight to an opinion that was not based on a review of the complete case record." *Perraut v. Comm'r of Soc. Sec.*, No. 1:12-CV-934, 2014 U.S. Dist. LEXIS 41057, at *13-14 (S.D. Ohio 2014) (Barrett, D.J.) (citing *Blakely*, 581 F.3d at 409).

Like the opinions of Drs. Green and Knierim, Dr. Burns' opinion was not consistent with the record as a whole as it was formulated without the evidence that indicated Plaintiff was entitled to restrictions that accommodated his lumbar issues. In viewing this factor alone, it may seem that the significant weight assigned to Dr. Burns' opinion was unreasonable compared with the little weight assigned to the opinions of Drs. Green and Knierim. However, Social Security Regulations permitted the ALJ to place more weight on the medical opinion of an examining physician like Dr. Burns than the little weight she

6

placed on the opinions of non-examining physicians, Drs. Green and Knierim. *See* 20 C.F.R. §§ 404.1527(c)(1), 404.927(c)(1).

Even if the ALJ committed some error in weighing Dr. Burns' opinion, any error would be harmless because the ALJ did not appear to rely on Dr. Burns' opinion in formulating Plaintiff's residual functional capacity. In actuality, the RFC assessment was far more favorable to Plaintiff than it would have been had the ALJ elected to rely on Dr. Burns' opinion. For instance, given the subsequent evidence in the record, the ALJ disagreed with Dr. Burns' opinion that Plaintiff had no physical limitations in sitting, standing, walking, lifting, and carrying, which in effect meant that Plaintiff had no physical limitations at all. And instead of relying on Dr. Burns' opinion, the ALJ limited Plaintiff to medium work which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds." *See* 20 C.F.R. §§ 404.1567(c), 404.967(c). She also limited Plaintiff to "no climbing of ropes, ladders, or scaffolds," and "only occasional climbing of ramps and stairs, no crawling, occasional stooping, kneeling, crouching, and balancing on uneven, moving, or narrow surfaces." (Doc. No. 6-2, PageID 65-66). Therefore, Plaintiff's challenges to the ALJ's weighing of Dr. Burns' opinion lack merit.

Plaintiff next contends that no medical source interpreted Plaintiff's MRI in functional terms, and the ALJ was not qualified to do so. (Doc. No. 9, PageID 1448). This argument is woven into Plaintiff's overarching contention that the medical evidence in the record does not support the finding that Plaintiff can perform medium work. *Id.*

"[A]n ALJ is not qualified to translate raw medical data, such as MRIs, into functional capacity determinations." *Mitsoff v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 693, 703 (S.D. Ohio Jan. 24, 2013) (Newman, M.J.) Report and Recommendation, adopted, 940 F. Supp. 2d 693 (S.D. Ohio March 2013) (citing *Mabra v. Comm'r of Soc. Sec.*, No. 2:11-CV-00407, 2012 WL 2319245, *9 (S.D. Ohio June 19, 2012) (Deavers, M.J.). Therefore, ALJ's are "cautioned against relying on their own expertise in drawing RFC conclusions from raw medical data." *Id.*

In the instant case, Plaintiff argues that no medical opinion interpreted the raw medical data into functional terms. The Commissioner disagrees and points to treatment records of neurologist, Dr. Aqueel Hussain Pabaney. (Doc. No. 13, PageID 1471). In doing so, the Commissioner maintains the ALJ did not "characterize the MRI results as unremarkable; rather, the neurologist described the results in that manner." *Id.*

For context, Plaintiff was referred to Dr. Pabaney by his pain specialist, Dr. Nadeem Ahmed. (Doc. No. 6-10, PageID 1369). Prior to this referral two physicians, Drs. Ahmed and Jeffrey Cushman, assessed Plaintiff's MRI, which is the primary medical data at issue. Both physicians articulated similar assessments and ultimately concluded that the MRI reflected: (1) lower lumbar facet arthropathy particularly at the L5-S1 level, and (2) asymmetric annulus bulge to the left at the L4-5 level with moderate left lateral recess stenosis. *Id.* at 1310-11, 1356. Upon review, Dr. Pabaney noted that it "[did] not show any overt compression of any neural elements," the "curvature [was] preserved," the "disc heights [were] maintained," and there was "no evidence of spondylolisthesis." *Id.* at 1369. He noted that Plaintiff's MRI was "fairly unremarkable." *Id.*

Contrary to the Commissioner's assertion, Dr. Pabaney's conclusion that the MRI was "fairly unremarkable" did not assist the ALJ in translating such information into functional terms. This conclusion is further supported by the overwhelming lack of medical opinion evidence related to Plaintiff's physical limitations to support the RFC assessment. *See Isaacs v. Comm'r of Soc. Sec.*, No. 1:08-CV-828, 2009 WL 3672060, at *11 (S.D. Ohio, Sept. 22, 2009) (Hogan, M.J.) (Report and Recommendation), adopted 2009 WL 3672060 (S.D. Ohio Nov. 3, 2009) ("[T]he ALJ rendered her RFC finding for medium work without reference to any medically determined RFC opinion bridging the raw medical data to specific functional limitations").

There is no doubt that "the administrative law judge … is responsible for assessing [a claimant's] residual functional capacity." 20 C.F.R. §§ 404.1546(c), 416.946(c). However, as the Social Security Administration has recognized, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations) ...." Soc. Sec. R. 96-8P, 1996 SSR LEXIS 5, *19, 1996 WL 374184, *7 (July 2, 1996) (footnote omitted).

As previously discussed at length, the Administrative Law Judge discredited and failed to adopt the opinions of Drs. Burns, Green and Knierim. These physicians offered the only medical opinion evidence that discussed Plaintiff's physical impairments, and as noted by the ALJ, these physicians rendered their opinions without access to later evidence that suggested Plaintiff's lumbar issues were more severe and required certain limitations.

9

Plaintiff's residual functional capacity seemed to suffer as a result, and it is difficult to trace the ALJ's conclusions to the evidence in the record.

In assessing Plaintiff's residual functional capacity, the ALJ limited Plaintiff to "medium work" with "no climbing of ropes, ladders, or scaffolds," only "occasional climbing of ramps and stairs," "no crawling" and only "occasional stooping, kneeling, crouching, and balancing on uneven, moving, or narrow surfaces." (Doc. No. 6-2, PageID 66). To justify these findings, the ALJ pointed to evidence that Plaintiff was working on cars, cleaning vacated houses, painting, remodeling, moving furniture, cleaning ceiling fans, dusting and washing the walls during the relevant period. *Id.* at 71.

There is no dispute that Plaintiff engaged in daily activities that arguably cut against the severity of his physical impairments, and the ALJ was within her purview to rely on this evidence in formulating Plaintiff's RFC. However, the daily activities fail to adequately account for the limitations the ALJ articulated. Activities such as remodeling, painting, cleaning ceiling fans, and washing walls would reasonably involve climbing ladders and/or scaffolds. Yet, Plaintiff's residual functional capacity includes "no climbing of ropes, ladders, or scaffolds." Likewise, those activities likely involve frequent stooping, kneeling, or crouching, and the ALJ limited Plaintiff to "occasional stooping, kneeling, crouching and balancing on uneven, moving, or narrow surfaces." This highlights that the residual functional capacity assessment lacks sound reasoning that is supported by the evidence in the record, and that the ALJ struggled to formulate Plaintiff's RFC given the deficient medical opinion evidence as to Plaintiff's physical impairments.

10

Medical evidence that could have assisted the ALJ in assessing physical limitations was entirely excluded from the ALJ's analysis. Dr. Pabaney, the neurologist, referred Plaintiff to physical therapy treatment after categorizing Plaintiff's MRI results as "fairly unremarkable." (Doc. No. 6-11, PageID 1371). Records indicate that Plaintiff followed through with Dr. Pabaney's referral and was seen several times. *Id.* at 1417-1425. There is no mention of these visits in the non-disability decision aside from the referral itself.

Plaintiff began physical therapy in November 2017. *Id.* at 1417. During the first visit, the physical therapist noted Plaintiff had the following functional deficits: (1) difficulty going up and down steps, (2) sleeping, (3) standing to wash dishes, (4) lifting a gallon of milk, (4) walking > 1.5 blocks, and (5) making up his bed. *Id.* At that visit, the physical therapist developed short- and long-term goals with Plaintiff and some long-term goals included being able to go up and down steps reciprocally with minimal pain, able to walk to the store and back with minimal pain, and able to sit for one hour with minimal pain. *Id.* at 1419. After several visits, Plaintiff made some progress toward his goals as he was able to sit for 35 minutes, but he still was taking steps one step at a time. *Id.* at 1424. The last available note from his physical therapy treatment indicates that Plaintiff had continued functional deficits in walking and sitting. *Id.* at 1424. In the decision, the ALJ does not mention the functional deficits, the short- and long-term goals that speak to those deficits, or Plaintiff's progress on those goals during the treatment period. Such information may have been informative in developing Plaintiff's residual functional capacity, or at the very least, supporting the ALJ's decision to adopt certain limitations.

11

Indeed, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (quoting *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)). Yet, "[t]here are limited occasions where the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a current medical source." *Shelley v. Comm'r of Soc. Sec.* No. 2:18-CV-676, 2019 WL 4023551, at *8 (S.D. Ohio Aug. 26, 2019 (Jolson, M.J.) (citation omitted).

This is not one of those limited occasions. As recognized, the ALJ largely rejected the relevant medical opinion evidence because later evidence showed that Plaintiff's lumbar issues were more severe and required relevant restrictions. Plaintiff had more than "relatively little physical impairment," and while the ALJ attempted to articulate appropriate limitations, substantial evidence does not support Plaintiff's residual functional capacity. Therefore, remand is appropriate. Upon remand, the ALJ shall obtain the opinion of an acceptable medical source regarding Plaintiff's physical impairments and the corresponding functional limitations.

## VI.   Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide

12

"good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether

Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is vacated;

2. No finding is made as to whether Plaintiff Allen Jones III was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42. U.S.C. § 405(g) for further consideration consistent with this decision; and

2. The case is terminated on the Court's docket.

March 5, 2021                                            *s/Sharon L. Ovington*
                                                                             Sharon L. Ovington
                                                                             United States Magistrate Judge